IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHONDA HOLLOWAY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRES-CO SYSTEM USA, INC., et al. | : | NO. 13-3337 |

## MEMORANDUM

Ditter, J.                                                                                                         February 28, 2014

      Plaintiff, Rhonda Holloway, brings this action against her former employer, Fres-Co System, USA, Inc., and two of the company's employees, Terry Mamenko and Ed Walsh, for violations of Iowa public policy related to her termination.  Defendants have filed a motion to dismiss Count I of plaintiff's complaint, arguing that choice of law rules demand application of Pennsylvania law, rather than Iowa law, and consequently, plaintiff has failed to state a claim for which relief may be granted under Pennsylvania law.  For the reasons discussed below, defendants' motion is DENIED.

    I.        **FACTUAL AND PROCEDURAL BACKGROUND**

      Holloway, a citizen of Nebraska, was briefly employed by Fres-Co from October 10, 2011, to November 2, 2011, as the Human Resources Manager in the company's Red Oak, Iowa, location.  Fres-Co has its principal place of business in Pennsylvania.  Defendants Mamenko and Walsh are individual officers of Fres-Co and residents of Pennsylvania.

      According to her complaint, Holloway started to feel ill shortly after she began her employment.  Holloway contends that she had "difficulty breathing" and was "suffering from upper respiratory issues, headaches, lethargy and overall achiness." *Compl.* ¶¶ 19-20.  On Monday, October 24, after a weekend of feeling sick, Holloway appeared for work but was only

able to work two hours because she felt ill.  After leaving work that day, Holloway visited her chiropractor for treatment.  The following day, she saw another chiropractor "who suggested her illness may be a result of exposure to chemicals in the plant."  *Id.* ¶ 24.  Holloway did not physically return to work after October 24, but "continued to perform her job duties from home" until she was eventually terminated on November 2, 2011.  *Id.* ¶ 27.

Holloway alleges that during her employment she noticed a "strong chemical odor" that was always present in the plant.  *Id.* ¶ 16.  On October 20, 2011, one day before plaintiff claims she began feeling ill, Holloway alleges that she informed the Plant Manager, Don Romig, of a violation of the Occupational Safety and Health Administration ("OSHA") regulations, as the facility needed a "windsock" placed on top of the building in order to determine the direction of the wind in the event of a hazardous release of chemicals.  Holloway contends that Romig failed to respond to her observation.

On October 26, the day after the chiropractor attributed her health issues to a possible exposure to chemicals, Holloway contacted defendant Terry Mamenko, Fres-Co's Director of Human Resources, and "expressed her concern that her illness was the result of exposure to chemicals in the plant."  *Id.* ¶ 25.  Holloway contends that Mamenko's response was that the company was conducting air quality and mold testing.

During this time, Holloway alleges that she attempted to communicate with defendants to reach a solution that would allow her to return to work safely.  Specifically, Holloway alleges that defendants denied her request to have an air purification system installed in her office, although they gave plaintiff the option of purchasing a system herself.  She also contends that she asked Romig and Mamenko to request the material safety data sheets containing information about the chemicals used in the plant "that might be poisoning the air."  *Id.* ¶ 32.

According to her complaint, Holloway contacted OSHA on October 27, and the United States Environmental Protection Agency ("EPA") on October 30, to report her concerns about the air quality at Fres-Co.  *Id.* ¶¶ 1, 34.  On October 31, Holloway contends that Mamenko notified her that a temporary employee would take over her position until she returned to work.  At or around that time, Holloway informed Mamenko that she filed a "first report of injury/notice of claim" with defendants' compensation carrier.  OSHA completed an inspection and audit of the Red Oak plant on November 1, 2011.  According to Holloway, she was terminated on November 2, 2011, and the decision to terminate her employment was made by Mamenko and Walsh.

At the start of plaintiff's employment, the parties signed a "Confidentiality and Non-Competition Agreement," which restricts the disclosure and use of certain confidential information and contains various non-competition clauses.  *See Defs.' Mot. Dismiss*, Exh. A.  Additionally, the Agreement states that plaintiff "shall be employed at will."  *Id.*, ¶ 2.  The Agreement also has a provision that it "shall be construed and interpreted according to the law of the Commonwealth of Pennsylvania."  *Id.*, ¶ 11.  Finally, the Agreement contains a forum selection clause, requiring all legal action between the parties be brought in the Court of Common Pleas of Bucks County or in the United States District Court for the Eastern District of Pennsylvania.  *Id.*, ¶ 12.  Holloway originally filed her complaint in Iowa state court, but that court dismissed the action, enforcing the Agreement's forum selection clause.  Plaintiff later filed her complaint in the Eastern District of Pennsylvania on June 13, 2013.

Plaintiff's complaint sets forth two counts, both alleging retaliatory discharge in violation of Iowa public policy.  Count I alleges that defendants wrongfully terminated Holloway's employment because she was fired for reporting an unsafe work environment and filing

complaints with OSHA and the EPA.  Count II sets forth a wrongful termination claim based on her reporting a workplace injury and for filing a workers' compensation report.  The defendants' motion presently before me seeks dismissal only of Count I; therefore, only Count I is discussed below.

## II.     STANDARD OF REVIEW

The standard of review for a motion to dismiss is well established.  Under Federal Rule of Civil Procedure 12(b)(6) a complaint shall be dismissed for failure to state a claim upon which relief can be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  I must accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom and view the facts in the light most favorable to the non-moving party.

## III.    DISCUSSION

Pursuant to Count I of her complaint, Holloway contends that the defendants' action, i.e. firing her for reporting an unsafe work environment to corporate management and to OSHA and EPA, violates Iowa public policy.  Holloway cites Iowa Code Chapter 88 and its emphasis on the importance of reducing occupational safety and health hazards as the source for this public policy.  She also cites Iowa Code section 88.9(3), which prohibits employers from discharging employees for complaining about safety issues.  Although Holloway has filed this action based on diversity of citizenship in the Eastern District of Pennsylvania, she has pursued claims only under Iowa state law and does not allege violations of any federal or Pennsylvania law.

Defendants move to dismiss Count I pursuant to Rule 12(b)(6), but they do not argue that Holloway fails to state a claim under Iowa law.  Rather, defendants contend that Holloway's wrongful termination claim must be analyzed under Pennsylvania law, as chosen by the parties

in the Agreement, and that the state law of Pennsylvania does not provide the protection afforded by OSHA regulations, a federal statute. Conversely, Holloway contends that the Agreement's choice of law provision does not apply to the present lawsuit and, after a choice of law analysis, Iowa law should apply, under which she would be entitled to relief.

### A. The Parties' Choice of Law

In analyzing which state's law – Pennsylvania or Iowa – applies in this case, the first question is whether the parties have agreed to the law applicable under these circumstances. If so, no further choice of law analysis will be necessary. *See Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161 (3d Cir. 1999) ("Both Pennsylvania law and the restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law.").[1]

Here, the parties have entered into an agreement with a choice of law provision, which states, "[t]his Agreement shall be construed and interpreted according to the law of the Commonwealth of Pennsylvania, in effect on the date hereof."[2] *Defs.' Mot. Dismiss*, Exh. A, ¶ 11. A plain reading of this provision is that Pennsylvania law applies to any issues *concerning the Agreement*; interpretation of terms, clauses, restrictions, etc. will be analyzed according to Pennsylvania law. Indeed, both parties agree that Pennsylvania law applies to the construction and application of the Agreement.

The question is whether plaintiff's cause of action falls within the construction and application of the Agreement, or whether it concerns a dispute outside the Agreement and therefore not covered by the choice of law provision. I find that the Agreement's choice of law

---

[1] In this diversity action, I must apply the choice of law rules of the forum state, Pennsylvania.

[2] There is no reason to question the validity of the choice of law provision, and plaintiff makes no argument that she did not voluntarily enter into the Agreement itself.

5

clause is a narrow provision, not one intended to encompass all possible disputes between the parties, particularly not the present employment discrimination claim. Simply put, plaintiff's suit is not controlled by the Agreement.

The Agreement's forum selection clause, set forth just one paragraph below the choice of law provision, is drafted in much broader terms. That paragraph reads, "[a]ny legal action brought under or concerning this Agreement, *or otherwise* between the parties shall be brought in the Court of Common Pleas of Bucks County, or in U.S. District Court for the Eastern District of Pennsylvania." Exh. A, ¶ 12 (emphasis added). In other words, this provision – presumably drafted by the employer – contemplates that there may be disputes between the parties other than those concerning the Agreement.

The provision in paragraph 2 declaring Holloway "employed at will" does not bring this cause of action concerning wrongful discharge in retaliation for complaints of an unsafe work environment within the ambit of the Agreement, as the defendants argue. This Agreement only covers, as its title states, Holloway's obligations and rights related to the use and disclosure of confidential information and her ability to compete and solicit, during and for a period of time after her employment.[3]

---

[3] The parties refer to section 187 of the Restatement, Second, Conflict of Laws, which has been adopted by Pennsylvania courts. However, that section does not apply here, where the parties do not have an agreement directed to the issues underlying the present dispute; therefore, their choice of law is irrelevant. This is not a situation, like many of the cases cited by defendants, where a court chooses to ignore an *applicable* choice of law provision in favor of another state's law. *See, e.g.*, *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54-55 (3d Cir. 1994) (finding Illinois law should apply where a lease contained a choice of law provision providing that it would be governed by Illinois law, the lease contained an explicit provision on the issue of indemnity, and the issue before the court was interpretation of the indemnity clause); *Synthes USA Sales, LLC v. Harrison*, No. 12-eda-2013, 2013 Pa. Super. LEXIS 4571 (Pa. Super. Ct. Dec. 24, 2013) (applying choice of law provision stating "[t]his agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania" where the agreement squarely covered the issues of confidentiality and solicitation of customers and the matter before the court involved enforcement of a non-solicitation provision by the employer).

Since I find the Agreement does not govern this dispute between the parties, the choice of law provision in the Agreement, which requires application of Pennsylvania law, does not control and I must employ a traditional choice of law analysis.

B.  Choice of Law Analysis

As previously pointed out, in this diversity action, I must apply the choice of law rules of the forum state, Pennsylvania.  Pennsylvania courts employ a flexible methodology to choice of law problems, one which analyzes the policies and interests underlying the particular issue in order to determine which state has the more significant contacts and then applies that state's law. This "interests/contacts" approach applies to both contract and tort actions involving choice of law questions.  *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227-29 (3d Cir. 2007) (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964)).

Weighing the *qualitative* contacts between Iowa and Pennsylvania, and the governmental interests underlying both states' laws, I find that Iowa has the most significant relationship to this dispute.  Holloway worked in defendants' facility located in Iowa, and most relevant to the issues in this suit, Holloway filed complaints internally and with government agencies concerning the unsafe working conditions in that Iowa facility.  Fres-co's alleged discriminatory decision, while perhaps made by personnel in Pennsylvania, impacted an employee working at its Iowa facility.  The fact that Fres-co's principal place of business is in Pennsylvania and the individual defendants reside in Pennsylvania, does not mean that Pennsylvania's contacts are equal to or greater than Iowa's contacts.

Iowa wants a workforce that is healthy and productive.  Toward that end, Iowa has laws to protect individuals employed within its borders from potentially hazardous working conditions and prevent employers doing business there from discriminating against their employees for

7

making good faith complaints about any unsafe conditions. In sum, because, between Pennsylvania and Iowa, Iowa has the most significant contacts and the greatest governmental interest, I will apply Iowa law to determine if plaintiff has stated a claim upon which relief can be granted.

Holloway has alleged that she was fired shortly after she complained to her employer and filed a report with OSHA and the EPA concerning an unsafe work environment. These allegations sufficiently state a claim for unlawful retaliation in violation of Iowa public policy. *See* Iowa Code § 88.9.

## IV.    CONCLUSION

Although this diversity action was brought in Pennsylvania, Pennsylvania law does not apply because the Agreement does not cover employment discrimination, and therefore, the Agreement's choice of law provision is not applicable. A choice of law analysis considering each state's interests and contacts compels application of Iowa state law. Under applicable Iowa law, Holloway has sufficiently stated a claim for wrongful termination in violation of Iowa public policy based on her allegations that she was fired in retaliation for reporting an unsafe work environment. As a result, defendants' motion to dismiss Count I must be denied.

An appropriate order follows